<u>**NOT FOR PUBLICATION**</u>                                                                    [64]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  | : |  |
| --- | --- | --- |
| JOHN STASICKY, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Civil No. 03-369 (FLW) |
| v. | : |  |
|  | : | **OPINION** |
| SOUTH WOODS STATE PRISON, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

<u>**WOLFSON, UNITED STATES DISTRICT JUDGE**</u>

Before the Court is the motion by Defendants James Finger, Dennis Gunn and Robert Melendez, employees or affiliates of South Woods State Prison ("SWSP") in Bridgeton, New Jersey,[1] to dismiss, pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6), the Complaint of Plaintiff John Stasicky, <u>pro se</u>. In the alternative, SWSP Defendants seek summary judgment on Plaintiff's claims against them. Plaintiff is currently incarcerated at SWSP, and alleges, pursuant to 42 U.S.C. § 1983, that SWSP Defendants violated his Eight Amendment right to be free from cruel and unusual punishment by: (1) failing to protect him from a cell extraction in which Plaintiff alleges he was subjected to the excessive use of force by certain SWSP corrections officers he does not identify; (2) failing to protect him from a sexual assault Plaintiff alleges he suffered at the hands of other SWSP corrections officers he does not name; and (3) failing to provide him with medical care for injuries he alleges resulted from both the extraction and alleged sexual assault.

---

[1] By Stipulated Order entered April 10, 2006, I dismissed Plaintiff's claims against Defendant Finger with prejudice. Accordingly, the motion now before the Court relates only to Plaintiff's claims against Defendants Gunn and Melendez. Hereinafter, I refer to Gunn and Melendez as the "SWSP Defendants."

1

SWSP Defendants assert that Plaintiff's claims against them are barred by the statute of limitations.  Alternatively, they argue that the evidence in the record leaves no material factual dispute for trial, and, consequently, they are entitled to summary judgment on Plaintiff's claims.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  For the reasons that follow, I am denying SWSP Defendants' motion to dismiss Plaintiff's Second Amended Complaint on the basis of the statute of limitations because the record is not adequate to determine whether the claims asserted against SWSP Defendants in Plaintiff's Second Amended Complaint, which were filed beyond the expiration of the statute of limitations applicable to such claims, relate back to the timely filing of Plaintiff's original Complaint and are thus not time barred.  However, I find that Plaintiff has failed to meet his burden to affirmatively identify genuine, material factual issues sufficient to defeat SWSP Defendants' motion for summary judgment.  Accordingly, for the reasons discussed more fully below, SWSP Defendants' motion for summary judgment is granted and Plaintiff's claims against them are dismissed.

## I.      BACKGROUND

Plaintiff is an inmate at SWSP and currently serving a fifteen-year term of incarceration for first-degree robbery.  He alleges that on January 23, 2001, he "hear[d] rumors" that he might be moved either within SWSP or to another facility.  See Plaintiff's Second Amended Complaint ("Sec. Am. Compl.") at pg. 3.  At that time, Plaintiff began to experience panic attacks, the severity of which he asserts rendered him unable to work at his prison job.  Id.  According to Plaintiff, Dr. Robert Thompson ("Dr. Thompson"), an SWSP staff psychologist, evaluated him at the time and concluded that Plaintiff was suffering from "paranoia and instability."  Id.

On January 25, 2001, Plaintiff was informed that he would be moved that day from "Facility 2" to "Facility 1" within SWSP. See Affidavit of Robert Melendez ("Melendez Aff.")

2

at ¶ 5.  In response to that news, Plaintiff experienced a severe anxiety attack and Dr. Thompson

ordered that he be placed in a padded cell in the SWSP Extended Care Unit ("ECU").  Id.

Plaintiff told SWSP corrections officers that he would "fight any attempt" to place him in the

ECU, and, in response, SWSP staff readied a cell extraction team.  Id.  Shortly thereafter, the

extraction team forcibly removed Plaintiff from his cell and transported him to the ECU.[2]  Id.

The extraction team removed Plaintiff's clothes and placed him in an ECU padded cell with a

blanket. Sec. Am. Compl. at pg 5.  Thereafter, an SWSP nurse examined Plaintiff, inspecting his

body for any signs of injury, finding none.  Id.  A short time later, a doctor visited Plaintiff and

provided him with sleeping pills, which Plaintiff took.  Id.

 Plaintiff claims that during the night he was awakened by several unknown individuals

who he alleges held him down and sexually assaulted him with an unknown object.  Id.  Plaintiff

claims that his assailants threatened to kill him if he told anyone about the attack, and warned

Plaintiff to "watch [his] back."  Id. at pg. 6.  Plaintiff never saw his alleged assailants directly, but

based his allegation that they were SWSP corrections officers on the blue uniforms he claims

they were wearing.  Id.  The next day, January 26, 2001, Plaintiff claims he experienced rectal

bleeding, but explained he did not report the bleeding or the alleged sexual assault to anyone out

---

2  Gregory Anchinko, an investigator for the New Jersey Department of Corrections Special
Investigations Division ("SID") videotaped Plaintiff's extraction and transportation to the ECU.  See
Melendez Aff. at ¶ 5.  Plaintiff alleges that as he was transported to the ECU, members of the extraction
team poked his eyes, twisted his wrists, and punched him in the ribs. Sec. Am. Compl. at pg. 5.  However,
Plaintiff did not report any such conduct to SWSP medical personnel during an evaluation after his arrival
at the ECU.  Id. at ¶ 10.  Defendant Melendez reviewed the videotape of Plaintiff's cell extraction and
transportation to the ECU and stated that no abusive conduct was visible. Melendez Aff. at ¶ 7.  The
Court also reviewed the videotape and found no support for Plaintiff's allegations of abuse.  However, I
note that Plaintiff was visibly agitated, alleged abuse before a single member of the team approached him,
and hurled a steady torrent of profanity at the extraction team during their intervention.

of fear of his attackers' threats. Id.   Plaintiff was moved from the ECU later that day. Melendez Aff. at ¶ 6.

On January 27, 2001, Plaintiff was placed in pre-hearing detention after being charged with an internal prison violation governed by the New Jersey Administrative Code. Sec. Am. Compl. at pg. 6.  Plaintiff remained in pre-hearing detention until a disciplinary hearing was conducted on January 31, 2001.[3]  Plaintiff claims that while in pre-hearing detention, he was denied showers, phone calls, and medical attention for the injuries he suffered during the alleged sexual assault, and that he continued to bleed from the rectum during the six-day period. Id. Plaintiff did not complain to anyone about his alleged rectal bleeding during this period, nor did he report the alleged sexual assault during that time. Melendez Aff. at ¶ 10.  During a February 2, 2001 evaluation, Plaintiff told Dr. Thompson of his rectal bleeding, however, the record is unclear whether Plaintiff claimed the bleeding was a result of the alleged sexual assault on January 25, 2001. Id.

On February 7, 2001, SWSP Lieutenant Edward Generals contacted Defendant Melendez and requested that he investigate Plaintiff's allegation that he was sexually assaulted while in the ECU on January 25, 2001.[4] Id. at ¶ 2-3.  The same day, Melendez received a copy of a written

---

3 Specifically, Plaintiff was charged with a violation of N.J.A.C. 10A:4-4.1(a)*.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility. See Sec. Am. Compl. at pg. 6.  The disciplinary hearing was originally scheduled for January 29, 2001, but was postponed to January 31, 2001. Id.  Plaintiff was adjudicated guilty of the disciplinary charge and received a sanction of time served and 120 days loss of commutation time. Id.  Plaintiff challenged the disciplinary charge, which the SWSP Associate Administrator ultimately dismissed. Id.

4 Defendant Melendez is an SID Senior Investigator whose duties include investigating allegations by inmates of abuse by custody staff, as well as investigating crimes committed in the New Jersey prison system generally. Melendez Aff. at ¶ 1.  The propriety of assigning Melendez to investigate Plaintiff's allegations is somewhat puzzling considering Melendez is a named Defendant in this action.  However, at the time of the assignment, Plaintiff had not commenced this suit, and did not do so for nearly two years, long after Melendez concluded his investigations.  Further, nowhere in any of Plaintiff's original or

statement Plaintiff gave to Carrie Sharpe, Assistant Supervisor of Education at SWSP, in which Plaintiff alleged he had been sexually assaulted by SWSP custody staff members who he could not identify. Id.  Thereafter, Melendez interviewed Plaintiff at SWSP. Id.  During the interview, Plaintiff confirmed his anxiety attack on January 25, 2001, admitted that he warned SWSP staff that he would "fight any attempt" to move him to ECU, and explained that throughout the day in question he had been feeling "foggy and unclear." Id. at ¶ 6.  Plaintiff further stated that he was not sure if he had been sexually assaulted during the night of January 25, 2001, and acknowledged that he suffered from a chronic colon condition that caused him to bleed from the rectum. Id.  Plaintiff also told Melendez that his colon condition, coupled with "stress and nervous breakdown that day may have caused [him] to have delusions of being sodomized." Id.  Finding no evidence to substantiate Plaintiff's claims, Melendez concluded his investigation. Id.

On April 17, 2001, SID Assistant Chief Investigator Chuck Muller referred a report of Plaintiff's sexual assault allegation to Melendez for investigation. Id. at ¶ 8.  During his second investigation of Plaintiff's sexual assault claim, Melendez examined medical records which revealed that Plaintiff was placed on "Suicide/Close Watch status on January 25, 2001." Id. at ¶ 9.  According to Melendez, Inmates placed on "Suicide/Close Watch status" are placed in a padded cell naked to prevent them from harming themselves with an item of clothing. Id. at ¶ 13. Such inmates are given a blanket and remain under continuous observation by custody staff through the window of the cell door. Id. at ¶ 12.  The cell door is not permitted to be opened until or unless medical staff is notified and present to respond to any possible emergency. Id.

---

subsequent amended complaints does Plaintiff allege any affirmative wrongdoing by either SWSP Defendant; instead, Plaintiff alleges only nonfeasance.

There is no record indicating any such emergency or other basis for SWSP staff to enter Plaintiff's padded cell between the time Plaintiff was placed therein, at 2:40 p.m. on January 25, 2001, and the time Plaintiff was discharged at approximately 2:00 p.m. on January 26, 2001. Id.

In connection with his second investigation of Plaintiff's assault claim, Melendez interviewed Plaintiff again on April 17, 2001. Id. at ¶ 10.  During that interview, Plaintiff stood by his sexual assault allegations, but admitted that he did not know the identity of his alleged assailants. Id. at ¶ 10.  Melendez further determined that there was no evidence that Plaintiff's move from Facility 2 to Facility 1 was ordered in an attempt to cause Plaintiff distress, and noted the general SWSP policy that inmates are subject to transfer among available housing units at any time, unless they are receiving specialized care. Id. ¶ 11.  Finally, Melendez found no evidence that Plaintiff ever complained of a sexual assault or any injury until February 2, 2001, when he was seen by Dr. Thompson. Id. at ¶ 13.  Unable to substantiate Plaintiff's allegations, Melendez concluded his second investigation. Id. at ¶ 10.

On January 23, 2003, Plaintiff filed a Complaint against SWSP, the SID, Correctional Behavioral Solutions, and certain John Doe defendants. See generally Compl.  The case was originally docketed before a different judge in this District and, on May 29, 2003, it was reassigned to this Court.  On August 18, 2003, I granted Plaintiff's application to proceed in forma pauperis ("IFP").  On November 23, 2003, I granted SID's motion to revoke Plaintiff's IFP status, pursuant to the "three strikes" provision of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), because Plaintiff had filed several frivolous lawsuits in the past.  On April 30, 2004, I granted SID's motion to dismiss Plaintiff's claims against it, and thereafter, the case was terminated mistakenly.

On May 27, 2004, this matter was reactivated, and, thereafter, on June 9, 2004, I granted Plaintiff leave to file an Amended Complaint.  In his Amended Complaint, Plaintiff named Defendant Finger and Defendants Jack Terhune, the former Commissioner of the New Jersey Department of Corrections; Sergeant Pitts, of SWSP; and Doctors Thompson, Kaldany, and Blackwell, who are mental health professionals associated with SWSP. See Plaintiff's Amended Complaint.

On September 10, 2004, Plaintiff filed a "Motion for Dismissal and/or Barmment, [sic] and Demand for Judgment and Relief," which I denied on September 13, 2004.  In that Order, I also directed that all references in Plaintiff's pleadings to "Correctional Behavioral Solutions" shall mean "Correctional Medical Services" ("CMS").  On November 30, 2004, Plaintiff filed a Second Amended Complaint in which he clarified the parties against whom he wished to proceed. See Sec. Am. Compl.  Specifically, Plaintiff named the SWSP Defendants, Finger, CMS, SID, Dr. Kaldany, Dr. Thompson, Stanley Nunn, who Plaintiff alleges is a State official responsible for housing and other inmate services in the New Jersey Department of Corrections, and John Does 1-20.[5]

On August 31, 2005, I granted the request by the SWSP Defendants and Defendant Finger for an extension of time within which to file an Answer to Plaintiff's Amended Complaint.  On September 1, 2005, Defendants Kaldany, Thompson and CMS filed an Answer to Plaintiff's Amended Complaint.  Defendant Thompson also filed a Counterclaim against the

---

5 In his Motion to Amend, Plaintiff made clear that he sought to substitute this list of Defendants for those he had named earlier. See Plaintiff's Motion to Amend Complaint.  Consequently, after filing Plaintiff's Second Amended Complaint, the Clerk of the Court terminated Defendants Terhune, Blackwell, and Pitts, who were not named in Plaintiff's Second Amended Complaint.  At that time, the remaining Defendants in this matter were: SWSP Defendants, Finger, CMS, Dr. Kaldany, Dr. Thompson, and Stanley Nunn.

SWSP Defendants, and Defendants Finger, CMS, and Nunn.[6]  On September 14, 2005, the SWSP Defendants and Defendant Finger filed a motion seeking an extension of time within which to answer Plaintiff's Second Amended Complaint.  On September 19, 2005, Plaintiff filed a Motion for Summary Judgment against certain Defendants, which I denied on April 26, 2006.  On October 21, 2005, I granted the application of SWSP Defendants and Defendant Finger, for an extension of time to answer Plaintiff's Second Amended Complaint, and, on December 8, 2005, they filed this Motion to Dismiss in Lieu of an Answer, pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively for Summary Judgment pursuant to Fed. R. Civ. P. 56.

On December 19, 2005, Plaintiff filed a "Motion for Orders, Answers, and Summary Judgment" in which he complained that SWSP Defendants and others had failed to timely answer his Second Amended Complaint, and, among other things, sought summary judgment against them.  On January 20, 2006, the Honorable Joel B. Rosen, U.S.M.J., denied that motion.[7]  On March 3, 2006, and on several other dates, Plaintiff filed letters with the Court requesting summary judgment against SWSP Defendants on the basis of their alleged failure to timely answer his Second Amended Complaint.  To date, Plaintiff has not filed written substantive opposition to this motion.

## II.   DISCUSSION

### A.   Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

---

6 On September 12, 2005, a Summons for Defendant Nunn was returned unexecuted by the U.S. Marshals.  As of this Opinion, it is unclear whether Nunn has ever been properly served with any of Plaintiff's various Complaints.

7 Plaintiff appealed Judge Rosen's January 20, 2006 Order, which I affirmed on April 26, 2006.

In considering a motion to dismiss a plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions offered in the guise of factual allegations are not afforded a similar presumption of truthfulness. Chugh v. Western Inventory Services, Inc., 333 F. Supp. 2d 285, 289 (D.N.J. 2004) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A complaint may be dismissed for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. Hishon, 467 U.S. at 73.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some

metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

If, as is the case here, the non-movant fails to oppose the motion, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g.,Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir.1990); see also Damino v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J.1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.  When, as here, "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quotations and citations omitted). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v.

Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar. 1, 1989); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000).

## C.    Statute of Limitations

SWSP Defendants seek dismissal of Plaintiff's Second Amended Complaint on the basis of the statute of limitations.  They argue that Plaintiff's claims against them are time barred because Plaintiff failed to name them in his original Complaint, which he filed on January 23, 2003, just before the expiration of the two-year statutory limit applicable in this case. Specifically, they assert that Plaintiff's claims against them in his Second Amended Complaint do not "relate back" to the filing of his original Complaint and therefore must be dismissed as out of time.[8]

In Wilson v. Garcia, 471 U.S. 261 (1985), the United States Supreme Court held that an action under 42 U.S.C. § 1983 should be considered a personal injury action for purposes of borrowing an appropriate state statute of limitations.  Therefore, civil rights claims in New Jersey are governed by the state's two-year statute of limitations on such claims. N.J. Stat. Ann. § 2A:14-2; Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Cito v. Bridgewater Tp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).   The statute requires that "an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Cito, 892 F.2d at 25 (quoting Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)). The two year limitations period, "begins to run from the time when the

---

[8]       Though the statute of limitations is an affirmative defense, the Third Circuit permits dismissal of a civil rights claim as time barred on a defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) as long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."
Montgomery, 159 F.3d at 126 (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d
Cir. 1991)).

Here, Plaintiff alleges he was assaulted between January 25 and 29, 2001.  Accordingly,
his cause of action accrued on January 25, 2001.  Plaintiff did not specifically name either of the
SWSP Defendants in his original Complaint filed January 23, 2003, or in his Amended
Complaint, filed June 9, 2004.[9]  Indeed, nearly two years passed from the expiration of the
statute of limitations in this case until Plaintiff named the SWSP Defendants in his Second
Amended Complaint, which he filed November 30, 2004.  Consequently, unless Plaintiff's
claims against SWSP Defendants relate back to the filing of his original Complaint, those claims
are time-barred.  However, because such a showing necessarily involves questions of fact which
can be resolved only by scrutiny of documents outside of the pleadings, I evaluate SWSP
Defendants' motion under the summary judgment standard rather than that governing a motion
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**1.      Relation Back**

Federal Rule of Civil Procedure 15(c) governs amendments to a plaintiff's complaint and
how subsequently named defendants and/or additional claims are evaluated for statute of
limitations purposes. See Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 193 (3d
Cir. 2001).  It states in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitations applicable
> to the action, or

9 Plaintiff named Defendant Finger in his June 4, 2004 Amended Complaint.  However, as noted above,
his claims against Finger have been dismissed with prejudice. See *supra* at n1.

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).  Under Rule 15(c)(1), a plaintiff must show that the claims asserted against a new defendant in an amended complaint relate back to his or her original timely filed complaint under the relevant state statutory provision, in this case: New Jersey Court Rule 4:9-3.[10] See, e.g., Slater v. Skyhawk Transportation, Inc., 187 F.R.D. 185, 196-97 (D.N.J. 1999). To satisfy Rule 4:9-3, a plaintiff must meet three conditions: (1) the claim asserted in the amended complaint must arise out of the conduct, transaction, or occurrence alleged or sought to be alleged in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; (3) the new defendant must have known or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her. Viviano v. CBS, Inc., 101 N.J. 538, 553 (1986).

---

10 Specifically, New Jersey Court Rule 4:9-3 states:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment

I find that there are issues of fact whether Plaintiff has substantially satisfied all three prongs of Rule 4:9-3, and by extension, Fed. R. Civ. P. 15(c).  First, Plaintiff's claims against SWSP Defendants in his Second Amended Complaint clearly arise out of the same facts underlying the claims in his original Complaint.  Indeed, the specific allegations constituting Plaintiff's claims in both his original Complaint and his Second Amended Complaint are essentially identical.  The only distinction between the two is the identity of the parties against whom Plaintiff asserts those claims.

Second, I find that Plaintiff's original, timely filed Complaint, which named certain John Doe Defendants, would provide SWSP Defendants with sufficient notice of the institution of Plaintiff's action to allow them to maintain their defenses without prejudice.  The New Jersey Court Rules permit a plaintiff to add new defendants past the expiration of the statute of limitations if, as here, the plaintiff listed fictitious defendants in his original complaint.[11]  See Slater, 187 F.R.D. at 196-97. For such claims to relate back to a timely filed complaint, however, the plaintiff must provide "'an appropriate description sufficient to identify' the defendant." Bryan, 837 F. Supp. at 643 (quoting Rutkowski v. Liberty Mut. Ins. Co., 209 N.J. Super. 140, 146-47 (App. Div. 1986)).  Too general a description, such as the party "otherwise responsible" for a plaintiff's injury is insufficient to provide adequate notice. Rutkowski, 209 N.J. Super. at 143-44.

---

11 "'Where a defendant is sued in a fictitious name because of plaintiff's inability to ascertain his identity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time.'" Bryan v. Associated Container Transp., 837 F. Supp. 633, 643 (D.N.J. 1993) (quoting Comment to N.J. Ct. R. 4:26-4); see also N.J. Ct. R. 4:26-4 ("In any action ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name.'").

Here, SWSP Defendants argue in their brief that they did not receive notice of Plaintiff's claims against them until they were served with his Second Amended Complaint on August 11, 2005.  Consequently, they argue that the second condition of Rule 4:9-3 is not satisfied.  I disagree.  Plaintiff's timely filed original Complaint named as defendants, among others, SWSP, SID, and John Does 1-20.  Further, Plaintiff's description of the acts and omissions constituting the basis of his claims plainly include the SID staff members present during his removal and transportation to the ECU padded cell, as well as those in or around the ECU with sufficient ability to protect him during the night of January 25, 2001.  Defendant Melendez has admitted that he is an employee of the SID and Defendant Gunn has not denied it.  Also, neither of the SWSP Defendants denies being present at the scene of Plaintiff's extraction and transportation, or otherwise at SWSP in a capacity as alleged by Plaintiff in his original Complaint.  Moreover, SWSP Defendants do not assert through affidavit or other sworn statement, that they were unaware of the scope of the allegations in Plaintiff's original Complaint or when these Defendants became aware of the allegations in the originally filed Complaint.  Construing the facts in a light most favorable to Plaintiff, as I must on this summary judgment motion by SWSP Defendants, I find that there are issues of material fact as to when the SWSP Defendants became aware of Plaintiff's original Complaint which could have provided them with adequate notice of Plaintiff's claims against them.  Furthermore, Plaintiff has had no opportunity to take discovery on the issue of the timing of SWSP Defendants' knowledge of the original Complaint.

Finally, I also find that a close reading of Plaintiff's original Complaint demonstrates that SWSP Defendants should have known Plaintiff intended to name them as parties to this action.  Indeed, as mentioned above, Plaintiff's original Complaint names SWSP and, more particularly,

SID, the unit for which both Defendants work, as well as John Does 1-20.  As employees of SID, it is reasonable for SWSP Defendants to have understood the allegations in Plaintiff's Complaint describing actions committed by unnamed individual SID defendants to have been asserted against them.  As discussed, while Plaintiff does not name either SWSP Defendant in his original Complaint, it is peppered with specific allegations of conduct by individual SID officers, which form the basis of the claims he asserts against them in his Second Amended Complaint. See generally Compl.  Further, although he does not name Defendant Melendez in his Complaint, Plaintiff specifically references the interview Melendez conducted with him during Melendez's first investigation of Plaintiff's assault allegation as among the facts giving rise to liability in this case. See Compl. at pg. 8.

Since there are substantial questions regarding the relating back of the claims in the Second Amended Complaint against SWSP Defendants, and no discovery has been taken on this issue, SWSP Defendants' motion for summary judgment based on the statute of limitations is denied.

**D.     Plaintiff's § 1983 Claims**

Plaintiff alleges, pursuant to 42 U.S.C. § 1983,[12] that SWSP Defendant violated his Eighth Amendment guarantee of freedom from cruel and unusual punishment.  Specifically, Plaintiff claims that SWSP Defendants failed to protect him from the alleged use of excessive

---

12 42 U.S.C. § 1983 provides a private cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States.  The statute, in and of itself, is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To assert a § 1983 claim, a plaintiff must allege that the defendant, "acting under color of State law," deprived him of a right secured by the Constitution and laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988); Natale v. Camden County Correctional Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).

16

force by the SWSP extraction team as they removed him from his cell and transported him to the ECU.  Plaintiff also alleges that SWSP Defendants failed to protect him from a sexual assault he alleges he was subject to at the hands of unidentified SWSP custody staff.  Finally, Plaintiff argues that SWSP Defendants failed to provide him with necessary medical treatment following the alleged sexual assault.  As discussed more fully below, I find that Plaintiff has failed to meet his burden to affirmatively identify genuine, material factual issues sufficient to defeat SWSP Defendants' motion for summary judgment.

The Eighth Amendment provides a constitutional basis for a § 1983 claim by prisoners alleging failure to protect. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  To prevail on such a claim, a prisoner must establish that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  To survive summary judgment, a plaintiff is thus required "to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997).

Similarly, the Eighth Amendment also provides a constitutional basis for a § 1983 claim by prisoners alleging inadequate medical care. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).  However, "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." Groman v. Township of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995).  The "deliberate indifference" standard is, essentially, a two-pronged test, requiring: (1) that the

prisoner's medical needs be serious, and (2) that there be deliberate indifference on the part of defendants. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987), cert. denied,486 U.S. 1006 (1988).  Mere disagreement with the form of treatment does not rise to a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 107 (1976).

As a threshold matter, I find that Plaintiff has simply failed to meet his burden of producing a scintilla of evidence to contradict SWSP Defendants' account of the material facts of this case.  Indeed, the evidence presented by SWSP Defendants, in the form of a videotape of Plaintiff's extraction from his cell and transportation to the ECU, and Melendez's affidavit describing his successive investigations into Plaintiff's allegations, support their contention that Plaintiff's claims are not supported by the record.  Without deciding the ultimate issue, I find, as a matter of law, Plaintiff has failed to create a question of fact sufficient to survive Defendants' motion for summary judgment.

As set forth at the outset, it is Plaintiff's burden to "affirmatively identify genuine, material factual issues sufficient to defeat" Defendants' motion for summary judgment. See Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000); Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar. 1, 1989).  Since instituting this action, Plaintiff has filed numerous motions seeking various relief as well as several letters challenging certain rulings by the Court and the Magistrate Judge assigned to this case.  Indeed, in his letters to the Court, Plaintiff has repeatedly taken the position that he is entitled to default, or, alternatively, summary judgment, based on SWSP Defendants' failure to file an Answer to

his Second Amended Complaint.[13]  However, at no time has Plaintiff filed written substantive opposition to the merits of SWSP Defendants' motion.  Accordingly, I am obliged to "accept as true all material facts set forth by the moving party with appropriate record support." Carp, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quotations and citations omitted).

WSP Defendants have presented evidence in support of their assertion that Plaintiff's allegations are the product of his fantasy, delusion, or mendacity.  The videotape of Plaintiff's extraction from his cell and transportation to the ECU does not reflect the use of excessive force by any member of the extraction team.  In addition, Plaintiff's own statements call into question whether the alleged sexual assault ever happened.  By Plaintiff's own admission on the day of the alleged assault he was suffering from paranoia and instability, as well as feeling "foggy" and "unclear" as a result of a severe anxiety attack.  Plaintiff was also under the influence of prescription sleeping pills at the time of the alleged attack.  Further, Plaintiff admitted that his alleged rectal bleeding might have been caused by a chronic colon disorder from which he suffers.

Moreover, the objective evidence presented by SWSP Defendant also supports their account of the material facts of this case.  According to Defendant Melendez, Plaintiff was under suicide watch and subject to an established SWSP policy prohibiting entry into his padded ECU cell without the presence of medical personnel.  The record contains no evidence of a medical authorization to enter Plaintiff's cell during the night of January 25, 2001.  Also, Plaintiff's failure to report the alleged sexual assault and rectal bleeding to anyone at SWSP for nearly one week further supports SWSP Defendants' description of the material facts.

---

13 I my April 26, 2006 Order denying Plaintiff appeal from Judge Rosen's January 20, 2006 Order, I set forth at length the legal basis allowing SWSP Defendants to file this motion in lieu of an Answer.

Additionally, there is no evidence to support Plaintiff's specific allegations against SWSP Defendants.  Plaintiff admits that he refused to leave his cell when ordered to do so, necessitating the actions of the SWSP extraction team.  Even assuming the extraction team used excessive force while moving Plaintiff to the ECU, there is no evidence that SWSP Defendants understood the extraction team to pose a substantial risk of serious harm to Plaintiff, nor is there any evidence that SWSP Defendants were deliberately indifferent to that risk.  Similarly, assuming the veracity of Plaintiff's sexual assault allegation, there is no evidence that SWSP Defendants were aware that Plaintiff was at substantial risk for such an assault or that they were deliberately indifferent to such a risk.  Finally, there is also no evidence that SWSP Defendants were deliberately indifferent to Plaintiff's medical needs.  Plaintiff admits that he never complained to anyone about his rectal bleeding until February 2, 2001, nearly a week after the alleged assault.  He does not allege that he was denied treatment thereafter.  There is simply no basis for liability during the intervening week because SWSP Defendants cannot, by definition, have been indifferent to a medical need about which Plaintiff never informed them.

In concluding that summary judgment in favor of SWSP Defendants is appropriate, I point out that my determination is not based on an evaluation of the merits of the evidence presented by the parties, or an evaluation of the credibility of the parties.  Rather, I conclude that summary judgment is appropriate on the basis of Plaintiff's total failure to present any record evidence in support of his allegations.  In the absence of any affirmative presentation by Plaintiff in which he identifies some genuine, material factual issue beyond the bare allegation in his complaints, I am constrained to grant SWSP Defendants' motion.

### III.    CONCLUSION

For the forgoing reasons, SWSP Defendants' motion to dismiss Plaintiff's Second

Amended Complaint, or alternatively, for summary judgment on his claims against them is

granted.

An appropriate Order shall follow.


/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge


Date: September 6, 2006.

21